**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SARAH DOE, et al.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **A-11-CV-907-LY** |
| | § | |
| **JERALD NEVELEFF, et al.** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants Corrections Corporation of America and Evelyn Hernandez's Amended Motion to Dismiss, filed June 15, 2012 (Clerk's Doc. No. 133); Plaintiffs' Response (Clerk's Doc. No. 135) filed June 28, 2012; and Defendants' Reply (Clerk's Doc. No. 142) filed July 5, 2012.

Also before the Court are: Defendant Williamson County's Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, filed July 5, 2012 (Clerk's Doc. No. 143); Plaintiffs' Response filed July 17, 2012 (Clerk's Doc No. 151); and Defendant Williamson County's Reply (Clerk's Doc. No. 157) filed July 27, 2012.  On November 2, 2012, Defendant Williamson County also filed a Motion for Summary Judgment (Clerk's Doc. No. 172).  Plaintiffs filed ita Response (Clerk's Doc. No. 176) on November 16, 2012, with a two-part Appendix (Clerk's Docs. No. 177 and 178).  Williamson County filed its Reply (Clerk's Doc. No. 179) and a Motion to Strike Plaintiffs' Summary Judgment Evidence (Clerk's Doc. No. 180) on November 29, 2012.  Plaintiffs filed a Response (Clerk's Doc. No. 184) on December 6, 2012, and Williamson County filed a Reply (Clerk's Doc. No. 187) on December 13, 2012.

The last in this series of motions now before the Court are the Federal Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, filed July 6, 2012 (Clerk's Doc. No. 145); Plaintiffs' Response, filed July 18, 2012 (Clerk's Doc. No. 153); and the Federal Defendants' Reply, filed August 3, 2012 (Clerk's Doc. No. 161).

All of these motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits, pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.   After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I.  BACKGROUND[1]

The Bureau of Immigration and Customs Enforcement ("ICE") is the federal agency "responsible for the apprehension and detention of inadmissible and deportable aliens." *Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland Sec.*, 711 F.Supp.2d 697, 703 (S.D. Tex. 2008) (citing 8 U.S.C. § 1103(a) and 8 C.F.R. Part 236).   Aliens in ICE custody are usually detained in facilities owned and operated by either state/local entities or by private prison contractors.  Second Amended Complaint at ¶ 32 (Doc. No. 122).  The T. Don Hutto Residential Center ("Hutto") is located in Taylor, Texas, and is owned and operated by Corrections Corporation of America ("CCA").  *Id.*, ¶¶ 3, 56, 59.

---

[1]The facts recited here, unless otherwise noted, are taken from Plaintiffs' Second Amended Complaint filed on May 5, 2012. (Clerk's Doc. No. 122).

Female ICE detainees are housed at Hutto pursuant to an Intergovernmental Services Contract ("IGSC") between ICE and Williamson County, and a Subcontract between Williamson County and CCA. *Id.*, ¶¶ 3, 19, 25, 56–59, 65; *see* Doc. No. 82, Exhibits 1 and 2. The federal government pays Williamson County, which then pays CCA, a monthy fee to house detainees. Williamson County charges CCA a monthly administrative fee. In addition, CCA pays Williamson County a monthly fee to defray the costs of the Williamson County representative hired to serve as the County's monitor. *Id*. at ¶¶ 53-54.

Plaintiffs are eight female ICE detainees[2] who were apprehended at or near the United States/Mexico border, and detained at Hutto pending a determination of removal. Doc. No. 122, ¶¶ 10–17, 79, 86, 93. They each allege that their "asylum claim was [subsequently] deemed sufficiently meritorious to seek release from detention and pursue it before the immigration court," and that during their transport to the airport or bus station, the male officer escorting them—Donald Dunn, then a CCA employee—stopped at a gas station or house, or pulled off to the side of the road and touched, fondled, and/or groped their "bodies," "arm area," waist, breasts, buttocks, and/or "crotch area." *Id.*, ¶¶ 10–17, 77–131. Plaintiffs allege that Dunn was the only officer transporting them each time. *Id.* These events allegedly occurred between October 19, 2009, and May 7, 2010. *Id.* at p. 6.

Plaintiffs filed their Second Amended Complaint on behalf of themselves and all others similarly situated. The defendants who remain in the suit are:

(1)   Defendant Jerald Neveleff ("Neveleff"), the Contracting Officer at ICE responsible for administering the contract between ICE and Williamson County governing the detention of female immigrant detainees at Hutto;

---

[2] Plaintiffs are Sarah Doe ("Sarah"), Kimberly Doe ("Kimberly"), Raquel Doe ("Raquel"), Anna Roe ("Anna"), Beth Roe ("Beth"), Constance Roe ("Constance"), Emily Roe ("Emily"), and Georgina Roe ("Georgina").

(2)     George Robertson ("Robertson"), the Contracting Officer's Technical Representative ("COTR") from the beginning of the Class Period until April 23, 2010;

(3)     Jose Rosado ("Rosado"), the COTR from April 23, 2010, until the end of the Class Period;

(4)     Williamson County, which contracted directly with, and received federal funds from ICE for the housing of federal detainees within the Hutto facility;

(5)     Corrections Corporation of America ("CCA"), which managed the Hutto facility during all time periods relevant to the allegations in this Complaint;

(6)     Former CCA Facility Administrator Evelyn Hernandez ("Hernandez"); and

(7)     Donald Dunn ("Dunn"), an employee of CCA with the title of Escort Officer and Resident Supervisor at the Hutto facility, who is accused of sexually assaulting the Plaintiffs.[3]

In their Second Amended Complaint, Plaintiffs bring a *Bivens* claim against Neveleff, Robertson and Rosado ("the Federal Defendants") alleging that the Plaintiffs' Fifth Amendment rights were violated by these defendants' deliberate indifference in monitoring the Hutto facility. Against Williamson County, Plaintiffs bring a 42 U.S.C. § 1983 claim, asserting violations of their Fifth and Fourteenth Amendment rights. Plaintiffs also raise various federal and state claims against CCA and CCA employee Evelyn Hernandez, the facility administrator at Hutto during the alleged incidents. Doc. No. 122, ¶¶ 28, 245–253, 258–275.[4] Plaintiffs also bring various state and federal claims against Dunn, who has not moved to dismiss those claims.

_____

[3] By stipulation of the parties, the District Court dismissed ICE employee Joe Benavides and John Foster, Williamson County's monitor at the Hutto facility.

[4] Counts Two (CCA) and Three (Hernandez) are civil rights claims brought pursuant to § 1983, and Count Seven (CCA) is brought pursuant to the Alien Tort Claim Act, 28 U.S.C. § 1350. Counts Five and Six are state negligence claims against both CCA and Hernandez.

## II.  STANDARDS OF REVIEW

### A.      Rule 12(b)(6)

When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1965-66 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.  The Supreme Court has recently made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.662, ___, 129 S. Ct. 1937, 1949 (2009).  The standard is properly guided by "[t]wo working principles." *Id.*  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50.  Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.  Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not

entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950. (quoting FED. R. CIV. P. 8(a)(2)).

## B.      Summary Judgment

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Commerce and Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, courts must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). "[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## III.   ANALYSIS

## A.      The Federal Defendants' Motion to Dismiss (Clerk's Doc. No. 145)

A civil rights lawsuit asserting claims of constitutional violations against federal government actors must be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action and a § 1983 suit represent coextensive

proceedings; the "only difference" being that the former involves an action against federal actors and the latter against state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n. 3 (5th Cir.) (per curiam), *reh'g and reh'g en banc denied*, 130 Fed. Appx. 705 (5th Cir. 2005) and *cert. denied*, 547 U.S. 1111, (2006). A federal official may only be sued in a *Bivens* action in his individual capacity. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 n.12 (5th Cir. 1994). Additionally, the United States is not vicariously liable for constitutional torts committed by its officials because the United States has not waived sovereign immunity for such actions. *Brown v. United States*, 653 F.2d 196, 199 (5th Cir. 1981).

In their *Bivens* claim, Plaintiffs allege Fifth Amendment violations against the Federal Defendants, alleging that their conditions of confinement were unconstitutional under *Bell v. Wolfish*, 441 U.S. 520, 531 (1979), and its progeny. Plaintiffs state their *Bivens* claim as follows:

> Defendants Jerald Neveleff (as Contracting Officer) and George Robertson and Jose Rosado (as Contracting Officer's Technical Representatives) exhibited deliberate indifference in their respective capacities by (1) willfully blinding themselves to the need to implement steps to prevent sexual assault during transport activities, even when those steps were required by applicable contracts, policies, and standards; and (2) failing appropriately to monitor transport activities which they knew to be proceeding in violation of applicable contracts, policies, and standards, under circumstances in which they knew that the applicable contracts, policies, and standards were designed to prevent sexual assault on the named plaintiffs and on the other members of the Class.

Second Amended Complaint ¶ 242. Plaintiffs further allege that the risk of assault and sexual assault on the named plaintiffs and other members of the Class under these circumstances was clear, obvious, and ongoing. *Id.* at ¶ 243.

The Federal Defendants move to dismiss the claims against them asserting: (1) the Court should not imply a *Bivens* claim premised on the management of a federal government contract

especially when an alternative process is available to protect the relevant constitutional interests; and (2) they are entitled to qualified immunity. Plaintiffs respond that: (1) they are not asking the Court to extend *Bivens* into a "new" context; (2) that there is no alternative process to seek redress against the Federal Defendants; and (3) that the Federal Defendants are not entitled to qualified immunity.

### 1.    Propriety of *Bivens* Remedy Against Federal Contractors

The Federal Defendants argue that applying *Bivens* in this case would be an inappropriate expansion of that remedy into a new context. They assert that the Supreme Court has consistently declined to extend the *Bivens* cause of action into new contexts. *Correctional Serv's Corp. v. Malesko*, 534 U. S. 61, 66-70 (2001); *see also Chappell v. Wallace*, 462 U.S. 296 (1983) (declining to extend remedy to military personnel injured by superior officers); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (declining to extend remedy to individuals denied social security benefits); *Minneci v. Pollard*, ——U.S. ——, 132 S.Ct. 617 (2011) (declining to extend remedy to prisoner injured by privately-employed prison guards); *Iqbal,* 556 U.S. 662, 678 (2009) (*Bivens* liability should not be extended to new contexts "[b]ecause implied causes of action are disfavored"). Defendants assert they cannot find any case in which a court has extended *Bivens* into the novel context of management of a federal government contract. Defendants maintain that by recognizing a *Bivens* claim against a federal employee based on how they managed a contract, the Court would be greatly expanding *Bivens* and opening the courts to a flood of *Bivens* litigation for alleged contract mismanagement. Motion at p. 11. They further argue that when an alternative existing process exists for addressing the constitutionally protected interests—in this case, common law state tort actions against Dunn and CCA—then a *Bivens* claim should not be allowed to go forward. *Minneci,* 132 S. Ct. at 617.

Plaintiffs respond that they are not seeking to extend *Bivens* into a new context, but rather, contend that the application of well-settled law imposes liability on federal officials who, through deliberate indifference, fail to protect detainees from sexual assault.  Plaintiffs rely upon *Farmer v. Brennan*, 511 U.S. 825 (1994) in support of their assertion that their *Bivens* claims against the Federal Defendants should be allowed to go forward.  In *Farmer*, in the context of the Eighth Amendment, the Supreme Court held that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate's health or safety violates the inmate's constitutional rights.  511 U.S. 825.

The Federal Defendants reply that Plaintiffs are wrongly equating non-custodial contract managers tasked with oversight of a government contract with custodial prison officials tasked with the oversight of detainees.  The Federal Defendants point out that *Farmer v. Brennan* decided the standard for an Eighth Amendment violation, and that there is no question that prisoners may sue their jailers under *Bivens*; however, they argue, the issue here is whether this Court should apply *Bivens* to "mere contract administrators" who were not in control of the conditions of the Plaintiffs' confinement.  The Federal Defendants assert that *Farmer*, and all the other cases relied upon in Plaintiffs' Response, involved defendants tasked with the custodial management of prisoners—prison guards, inmate case managers, medical professionals, sheriffs, wardens, and regional custodial managers.  They argue that ICE entrusted all custodial functions to Williamson County through it contract with Williamson County, which in turn contracted with CCA to carry out those duties.

In support of this claim, that the Federal Defendants were mere non-custodial contract managers, the Federal Defendants rely upon the language of the IGSA, Article III.D., the section that

governs the transportation services that are the focus of the claims in this case. That section reads, in relevant part:

> The Service Provider will provide, upon request and as scheduled by the COTR, necessary escort and transportation services for residents to and from designated locations. Escort services will be required for escorting residents to and from designated locations, escorting witnesses to the courtroom, and any escort services requested by an ICE judge during proceedings. Escort services shall also include providing all such ground transportation as may be required to transport residents in a secure and timely manner. Transportation or escort services may be required to transport residents from the Facility to and from a medical facility for outpatient case. During all transportation activities, at least one (1) transportation officer shall be of the same sex as the residents being transported.

Clerk's Doc. No. 82, Exh. 2 at Art. III.D. Further, Section 4(b)(21) of the Statement of Work that is Attachment I to the IGSA, reads, in relevant part:

> 1) The Service Provider shall provide transportation services as may be required to transport residents securely, in a timely manner, to locations as directed by the COTR. . . .
>
> 4) Transportation routes and scheduling shall be accomplished in the most economical manner as approved by the COTR.

*Id.* at Attach. 1 ¶ 4(b)(21).

While the arguments just recited are applicable to the Federal Defendants' attack on the merits of the *Bivens* claim, they are misplaced here. None of those arguments demonstrate that no currently recognized *Bivens* claim could ever be raised against a federal employee with oversight authority over a federal detainee. As already discussed, *Bivens* held that under appropriate circumstances the federal courts possess the discretion to create remedial actions against federal officials for violations of constitutional rights, even though Congress may not have expressly authorized a remedy. *Bush v. Lucas*, 462 U.S. 367, 373–74 (1983). As the Federal Defendants note, the Supreme Court has drawn upon this power in only three instances: (1) *Bivens*, 403 U.S. 388,

which created a claim for violations of Fourth Amendment rights by a federal agents;  (2) *Davis v. Passman*, 442 U.S. 228 (1979), which created a claim for employment discrimination in violation of the Due Process Clause; and (3)  *Carlson v. Green*, 446 U.S. 14 (1980), which created a claim under the Eighth Amendment against federal custodial officials for unconstitutional conditions of confinement.

Plaintiffs argue that they are in no way attempting to extend *Bivens*, and are not advocating that the Court recognize any new *Bivens* cause of action here.  Instead, they contend that *Bivens* claims like theirs have been recognized by the Supreme Court and other courts, and that in bringing a *Bivens* claim against the federal prison officials here, Plaintiffs are simply following that rubric. Plaintiffs expressly rely on *Farmer,* and argue that in *Farmer* the Supreme Court expressly permitted a *Bivens* claim based on Fifth and Eighth Amendment violations by federal prison officials. Plaintiffs also argue that the Federal Defendants misstate their claim as being based on contract oversight, when it is in fact based on direct actions, or inaction, by the Federal Defendants.

In *Carlson v. Green*, briefly noted above, the Supreme Court held that prisoners could bring *Bivens* claims against federal prison officials for violations of their Eighth Amendment rights.  446 U.S. at 14.  *Carlson* does not differ from the instant case with the exception that this case involves immigration detainees—and thus Fifth, not Eighth Amendment violations.  Applying the cause of action recognized in *Farmer* and *Carlson* to this case in no way requires an extension of *Bivens*.  *See Arar v. Ashcroft*, 585 F.3d 559 (2nd Cir. 2009) (relying on *Carlson* and stating "a federal inmate serving a prison sentence can employ *Bivens* to seek damages resulting from mistreatment by prison officials. It would be odd if a federal detainee not charged with or convicted of any offense could not bring an analogous claim."); *see also Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004) (reversing

district court's dismissal of pretrial detainee's *Bivens* action alleging unconstitutional conditions of confinement at federal penitentiary in violation of the Due Process Clause of the Fifth Amendment).

The real question raised by this discussion—and the one Defendants conflate with the issue of whether the Court is in some way extending *Bivens*, which it is not—is whether Plaintiffs have pled sufficient individual, direct action by the Federal Defendants such that they may properly be held liable under *Bivens*. The Court addresses that issue in the context of the qualified immunity defense, discussed in the next section.

### 2.   Qualified Immunity

The Federal Defendants argue that they are entitled to qualified immunity from Plaintiffs' claims because they were not personally involved in Plaintiffs' assaults, had no knowledge of the assaults, and did not violate Plaintiffs' clearly established constitutional rights.  Plaintiffs respond that the Federal Defendants are not entitled to qualified immunity because Plaintiffs have alleged that the Federal Officials were deliberately indifferent to the substantial risk of their sexual assault during post-detention-release transportation and that is sufficient to overcome qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, —— U.S. ——, 32 S.Ct. 2088, 2093 (2012) (citations omitted).  When a defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an entitlement not to stand trial or face the other burdens

of litigation." *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 552 U.S. at 673. Second, if a violation has been alleged, the court must determine "whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). In their motion, the Federal Defendants rely almost entirely on the first prong of this test, contending that Plaintiffs have failed to allege anything amounting to a constitutional violation.[5] The Court will focus the majority of its attention on that issue.

---

[5]In a one-paragraph argument Defendants assert that the Plaintiffs also cannot meet the second prong, contending that "[t]he law does not clearly establish that a contracting officer's failure to enforce the terms of a contract amounts to a constitutional violation." Because this misconstrues the violation Plaintiffs allege, the argument is easily dispensed with. What Plaintiffs claim is that, by their deliberate indifference, the Federal Defendants violated the Plaintiffs' clearly established right not to be held in conditions of confinement that subjected them to an unreasonable risk of sexual assault. That right was clearly established at the time of these events. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ( "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' "); *Gros v. City Grand Prairie, Tex.*, 34 Fed. Appx. 150 (5th Cir. 2002) (unpublished) (recognizing the clearly established right to be free from sexual assault) (5th Cir. 2002); *see Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (relying on *Farmer* and stating "[a] sexual assault on an inmate by a guard . . . is deeply offensive to human dignity.").

### 1.        Constitutional Violation

The Due Process Clause of the Fifth Amendment prohibits holding pretrial detainees under conditions that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 531 (1979). In the Fifth Circuit, the standard applicable to due process claims by detainees depends on whether the Plaintiffs complain of a "condition of confinement" or an "episodic act or omission." *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000). A "condition of confinement" case is a "[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996). In contrast, where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an "episodic act or omission" case and is reviewed under the standard set out *Farmer v. Brennan*.

To prove a violation of constitutional rights in connection with an episodic act or omission case, such as is presented here, a detainee must establish that prison officials acted with subjective deliberate indifference as set forth in *Farmer*. *See Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc); *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (pretrial detainee's sexual assault by guard was classified as an episodic act or omission, subject to subjective deliberate indifference standard for liability). Deliberate indifference is more than mere negligence. *Id.* at 835. To establish deliberate indifference the plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer*, 511 U.S. 825, 834 (1994). Additionally, the plaintiff must show that jail officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839.

14

A detainee can make a prima facie case of deliberate indifference by showing "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the [official] sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842. Knowledge may be inferred if the risk was obvious. *Farmer*, 511 U.S. at 838-842; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Importantly for the present motion, whether a prison official had the requisite knowledge of a substantial risk is a question of fact. *Farmer*, 511 U.S. at 837; *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998).

Plaintiffs assert that the risk of sexual assault was obvious to the Federal Defendants in this case, because of documented instances of sexual assaults by guards that have occurred at other ICE detention centers. Second Amended Complaint at ¶¶ 41,43,44,48, and 50. Plaintiffs cite various cases in support of this assertion. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *see, e.g., Monceaux v. White*, 266 Fed. Appx.362, 366 (5th Cir. 2008); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010); *In re Bayside Prison Litig.*, 341 Fed. Appx. 790, 795-96 (3d Cir. 2009); *Williams v. McLemore*, 247 Fed. Appx. 1, 11 (6th Cir. 2007). They also contend that the Federal Defendants were aware that the IGSA required that a same sex officer be present at transportation, and that this requirement was designed to prevent sexual abuse by guards against prisoners. Plaintiffs allege that the well-known history of sexual assaults at ICE detention facilities led to the implementation of the same-sex transport policy, and assert that the Federal Defendants knew this. As further evidence of "obviousness," the Plaintiffs also plead that the very records the COTR's had access to, and were charged with reviewing, showed that between October 19, 2009, to May 7, 2010, 22 separate male officers made a total of 77 transport trips with female detainees

without any accompaniment by another guard, female or otherwise.  Second Amended Complaint at ¶ 227, ¶ 223.

The Federal Defendants reply that the Plaintiffs do not plead that the COTR's actually looked at the books or were present for the transports, and that these facts are therefore insufficient to demonstrate the subjective knowledge required by the Constitution to hold them liable. The Court disagrees.

As the COTRs at Hutto during the relevant time period , Robertson and Rosado worked onsite at the Hutto facility, and thus were physically present at the detention center.  They were tasked, among other things, with ensuring "that the facility conditions, policies/procedures, and handling of residents all conform[ed] to the performance standards" put forward in the IGSA. Second Amended Complaint at ¶ 224.  As part of this process, the COTRs participated directly in various aspects of operating the Hutto facility and had full access to detailed information concerning any aspects they were not personally involved in.  *See, e.g., id.* at ¶¶ 218-227.  Indeed, the IGSA notes that the very transport activities that gave rise to the Plaintiffs' injuries were to be "scheduled by the COTR."  IGSA, § III.D.   In a number of cases federal courts of appeal have concluded that where an official responsible for ensuring that a policy designed to prevent sexual assault is followed does nothing to make certain the policy is being followed, then that knowing failure can be sufficient to show subjective deliberate indifference. [6]   Accordingly, the Court concludes that Plaintiffs'

---

[6]*See Tafoya v. Salazar*, 516 F.3d 912, 918-19, 922 (10th Cir. 2008) (reversing dismissal of § 1983 claims, holding that a plaintiff had adequately alleged deliberate indifference as a moving force where a sheriff failed to implement a policy requiring female officers to escort female prisoners and a prisoner was sexually assaulted as a result, and noting that "knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference"); *Cash v. County of Erie*, 654 F.3d 324, 334-38 (2d Cir. 2011) (holding evidence sufficient to show deliberate indifference as causal factor where Defendants were aware of applicable policies designed to prevent

Second Amended Complaint makes sufficient factual allegations to prevent dismissal of the claims against Robertson and Rosado.

With regard to Defendant Neveleff, the Court finds that the claims should be dismissed. While all three Federal Defendants had direct responsibilities for ensuring that the Hutto facility met performance standards designed to prevent sexual assault on detainees, Second Amended Complaint at ¶¶ 228-230, Defendant Neveleff was located off site and thus was relying on his COTRs to monitor the facility and compliance with the IGSA. Plaintiffs' argument relies on the fact that all three Federal Defendants were "directly involved in controlling the time, place and manner of transports of female detainees to or from Hutto." Response at p. 3. However, Neveleff was not on site and could not directly control the time, place and manner of transports of individual residents. And to the extent the claim is viewed as asserting that Neveleff failed to properly supervise the COTRs, that claim fails, as failure to supervise cannot give rise to a *Bivens* action. *See Toledo v. Bureau of Prisons*, 238 Fed. Appx. 10 (5th Cir. 2007); *Montoya–Ortiz v. Brown*, 154 Fed. Appx. 437 (5th Cir. 2005); *Pelayo v. U.S. Border Patrol Agent No. 1*, 82 Fed. Appx. 986 (5th Cir. 2003).

---

sexual assault of prisoners by prohibiting unmonitored one-on-one contact between guards and prisoners, but failed to implement them, resulting in sexual assault); *Hostetler v. Green*, 323 Fed. Appx. 653, 658 (10th Cir. 2009) ("Surely a [prison official's] knowledge that a policy was enacted specifically to prevent sexual assault, combined with his knowledge that he did violate that policy, tends to support . . . an inference that he was aware of an increased risk of sexual assault") (emphasis in original); *Bode v. City of Fullerton*, 815 F. Supp. 2d 1117, 1121 (C.D. Cal. 2011) (denying summary judgment on § 1983 claim involving the failure of a male officer to follow a written policy of having female officers search female detainees and observing that "[i]t is a reasonable inference that those policies were put in place precisely to prevent the sort of civil rights violations that Plaintiffs now allege. Thus, the City's total failure to monitor officers to ensure that they were implementing these policies amounts to a deliberate indifference to Plaintiffs' civil rights.").

**B.**     **Williamson County's Motion to Dismiss (Clerk's Doc. No. 143)**, **Motion for Summary Judgment (Clerk's Doc. No. 172), and Motion to Strike (Clerk's Doc. No. 180)**[7]

Plaintiffs sue Williamson County pursuant to 42 U.S.C. § 1983 alleging that it was deliberately indifferent and failed to protect Plaintiffs from the obvious risk of sexual assault and also failed to remedy that obvious risk. Plaintiffs' Second Amended Complaint states:

> 246.   . . . from the beginning of the Class Period up until May 7, 2010, Defendants Williamson County and Corrections Corporation of America maintained or sanctioned official policies, practices, and customs of deliberately indifferent failure to protect female immigrant detainees at the Hutto facility from the obvious risk of sexual assault by male escort officers during transport from that facility by (1) failing to implement steps to prevent sexual assault during transport activities, even when those steps were required by applicable contracts, policies, and standards; and (2) failing appropriately to monitor transport activities which Defendants knew to be proceeding in violation of those applicable contracts, policies, and standards, under circumstances in which it was clear and obvious that the applicable contracts, policies, and standards were designed to prevent sexual assault on the named plaintiffs and on the other members of the Class.
>
> 247.   The risk of assault and sexual assault on the named plaintiffs and other members of the Class under these circumstances was clear, obvious, and ongoing.

The County argues that it is entitled to dismissal of the claims against it because Plaintiffs make no factual assertions in their Second Amended Complaint entitling them to relief against Williamson County. Williamson County also moves for summary judgment asserting that no fact issue exists as to whether Williamson County adopted a policy of failing to protect immigrant detainees from assault and whether it was deliberately indifferent to Plaintiffs' constitutional rights.

---

[7]Williamson County moved to strike two pieces of evidence submitted by the Plaintiffs, see Clerk's Doc. No. 180, but in its reply withdrew one of those objections. The sole remaining issue relates to the expert report of Professor Brenda V. Smith, which the County alleges contains hearsay and impermissible legal conclusions. Because the Court does not rely upon any hearsay or legal conclusions contained in that report, Williamson County's Motion to Strike Plaintiffs' Summary Judgment Evidence (Clerk's Doc. No. 180) is **DENIED AS MOOT.**

Under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978), municipalities are only subject to liability under § 1983 when the injury is a result of on official practice, policy or custom. Plaintiffs have acknowledged in their Second Amended Complaint that Williamson County adopted a policy requiring that one transporting officer must be of the same sex as the residents being transported.  Second Amended Complaint at ¶¶ 2-3, 66, 214, and 225.  Williamson County argues that Plaintiffs have failed to show that this policy caused the injury; rather, the County argues that what actually caused the injuries was the other defendants' failure to follow the policy.  Relying on *Monell*, the County argues it cannot be held liable for what was actually CCA's and its employee's failure to follow the stated policy.

Plaintiffs respond that they are not arguing that the policy itself violated the Constitution. Rather, Plaintiffs argue that Williamson County adopted a "posture" of deliberate indifference with regard to the transport provision of the IGSA, by failing to monitor whether or not the detainees were being transported as required by the policy.  Plaintiffs claim that a pattern of constitutional violations existed sufficient to show deliberate indifference on the part of Williamson County.  In support of this argument, Plaintiffs again note that during the relevant time period 22 different male escorts violated the IGSA transport provision at least 77 separate times.

### 1.   *Monell*

A governmental entity may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees or agents.  *Monell*, 436 U.S. at 694.  In order to establish a claim against a governmental entity under § 1983, a plaintiff must prove that: (1) a constitutional violation occurred, (2) an injury resulted from a custom or policy, (3) a causal connection between the constitutional violation and the custom or policy, and (4) deliberate

indifference.  *See generally, City of Canton v. Harris*, 489 U.S. 378, 385 (1989)*;  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404, 411–12 (1997) (the "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury.").  For purposes of the *Monell* analysis, a "policy or custom" is either (1) a policy statement or rule that is officially promulgated by the county's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of county officials or employees, which is so common and well settled as to constitute a custom that fairly represents county policy. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc).  Actual or constructive knowledge of the custom must be attributable to the county's governing body or to the official to whom policy-making authority has been delegated.  *Id.*

The parties dispute what qualifies as the official Williamson County policy in issue. Williamson County argues that it adopted the IGSA policy prohibiting solo male transportation of female detainees and that policy obviously could not have led to Plaintiffs' sexual assaults by Dunn. Plaintiffs assert that Williamson County failed to properly monitor the CCA employees and make sure that the transportation policy was followed, and thus, that is a custom sufficient to make out a 1983 claim.  The Court disagrees.

There is no evidence that Williamson County adopted a policy or custom of failing to implement steps to prevent sexual assaults during transport activities or failing to monitor transports. From the facts presented in the summary judgment motion, it is difficult for Plaintiffs to argue that Williamson County had a "persistent widespread" policy of ignoring or turning a blind eye to transport issues at Hutto.  The summary judgment evidence establishes that in 2007 Williamson County concluded that it needed a representative at Hutto to serve as the County's "eyes and ears"

and requested that the County's monitor be given "unabated right to access the entire facility at random times." 2007 E-mail between Neveleff and Hawes, attached as Exhibit E to Plaintiffs' Response to Williamson County's Motion for Summary Judgment. As Williamson County's monitor, John Foster visited Hutto on approximately a weekly basis. Foster Affidavit at ¶ 6. Foster stated that prior to May 11, 2010, he had no indication that the transport policy requiring same-sex transport of detainees was not being followed. Foster Deposition at p. 150. Further, he stated that he had observed one instance of detainees being unloaded from a transport bus and did not observe any violation of the policy. Foster Affidavit at ¶ 7. The summary judgment evidence is that in May of 2010 when Foster discovered the allegations of Dunn's sexual misconduct, Foster recommended that Williamson County open a criminal investigation into the matter—which Williamson County did. Foster Affidavit at ¶ 8, attached as Exhibit A to Williamson County's Motion for Summary Judgment. Williamson County ultimately arrested and criminally charged Donald Dunn for his conduct.

CCA's continued failure to follow the transport policy cannot be attributed to a Williamson County policy or custom. There is no evidence that any Williamson County official knew or should have known that its stated policy was not being followed. Although Foster failed to detect the fact that CCA was not complying with the transport requirements of that contract for several months, the fact is that once he did, he acted swiftly to remedy the issue. Once discovered, the County investigated the claims and was instrumental in bringing criminal charges against Dunn. The facts pled by the Plaintiffs are simply not enough to make out a claim of municipal liability under *Monell*.

**C.**   **Defendants CCA and Evelyn Hernandez's Motion to Dismiss (Clerk's Doc. No. 133)**

Defendants CCA and Evelyn Hernandez move to dismiss Counts Two (against CCA) and Three (against Hernandez), both of which are brought pursuant to § 1983, and Count Seven (against CCA), brought pursuant to the Alien Tort Claim Act.[8]

**1.**   **Section 1983 Claims**

Counts Two and Three of Plaintiffs' Second Amended Petition are brought pursuant to 42 U.S.C. § 1983, and allege that CCA and Hernandez failed to monitor detainee transports and implement steps to prevent assaults during these transports in deliberate indifference to Plaintiffs' Fifth and Fourteenth Amendment rights.  Second Amended Complaint at ¶¶ 246, 251.

First, the parties dispute whether CCA and Evelyn Hernandez can be viewed as "state actors" such that their conduct falls within § 1983.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988).  This issue is important, because if CCA and Hernandez are "federal actors" they cannot be sued under either Section 1983, which by its very language is limited to state actors, or *Bivens*, which does not apply to private prisons or private prison employees. *Corrections Services Corporation v. Malesko*, 534 U.S. 61 (2001) (*Bivens* does not apply to private corporate entities); *Minneci v. Pollard*, ——U.S. ——, 132 S.Ct. 617, 623 (2012) (federal prisoner seeking damages from an employee of a private prison may not bring a *Bivens* action).

---

[8]The motion does not address Counts Five and Six, which are state law negligence claims against CCA and Hernandez.

Private prisons may be sued pursuant to § 1983 only if they acted under color of state law. The state action requirement may be met when a private prison company operates and manages a state prison through a contractual relationship with the state. *Gallien v. Correction Corp.*, 91 F.3d 140 (5th Cir. 1996); *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). In this case, CCA operated the detention facility through a contract with Williamson County, which is a political subdivision of the state of Texas. Notwithstanding this, CCA and Hernandez point out that the Plaintiffs were detainees in the custody of ICE, which is a federal agency. They argue that since ICE has the exclusive authority to detain aliens, they were exercising federal authority in their detention of Plaintiffs.

Hernandez and CCA cite various cases in support of this contention. *See Bromfield v. McBurney*, No. C07-5226RBL-KLS, 2008 WL 2746289, at *9 (W.D. Wash. July 8, 2008) (employees of private administrator of federal immigration detention center were federal actors because "the power to detain immigrants is derived solely and exclusively from federal authority" and therefore employees acted as the federal government's "alter ego" in detaining plaintiffs); *Jama v. U.S. I.N.S.*, 343 F.Supp.2d 338, 362 (D. N.J. 2004) (in action brought by undocumented aliens detained at facility operated by private correctional company, court held that private company employees "were federal actors because they were employees of a corporation performing governmental functions pursuant to a contract with the INS"); *see also United States v. Thomas*, 240 F.3d 445, 448 (5th Cir. 2001) (holding that guard at CCA facility, which contracted with INS to house INS detainees, was a "public official"—i.e., a "person acting for or on behalf of the United States … in any official function"—under federal bribery statute because he performed same duties and had same responsibilities as a federal corrections officer employed at a federal prison facility);

23

*Fabian v. Dunn*, No. SA-08-269-XR, 2009 WL 2461207, at *5 (W.D. Tex. Aug. 6, 2009) (in action by detained immigrants housed at private correctional facility, argument that facility's employees were state actors rejected).

Plaintiffs argue that these cases are distinguishable because here ICE contracted with Williamson County and then Williamson County contracted with CCA. Plaintiffs note that in all of the cases just discussed, the federal government contracted directly with the private prison or private facility, but in this case CCA derived its authority to run the facility through its contract with Williamson County—a state entity—and thus CCA and its employees are state actors. Plaintiffs cite *Alvarez v. Geo Group, Inc.*, 2010 WL 743752, *2 (W.D. Tex. March 1, 2010), in support of this proposition. In *Alvarez*, Judge Nowak found that the Geo Group, which housed both state and federal prisoners at its Val Verde facility, was acting under state law and could be sued pursuant to Section 1983 for the injury of a federal prisoner. In denying the Geo Group's argument that it was a federal and not state actor, Judge Nowak found that the County had contracted with the Geo Group to perform a function "traditionally the providence of the state—confinement of prisoners—specifically, for the operation of the jail." *Id.* at * 2. She found that the County's contract with the United State's Marshal's Service to house federal prisoners did not change the character of the Geo Group's function.

Here the situation si slightly different. The apparently novel question presented here is when a federal agency contracts with a state actor to carry out a uniquely federal function and that state actor subcontracts out the entire federal function to a private actor, whether that private actor is carrying out state or federal duties. In the *Alvarez* case just discussed, the facility in question held both state and federal prisoners. It is likely that Judge Nowak was influenced by the fact that had

24

she held that the Geo Group was not a state actor because a federal rather than a state prisoner was injured, that would have led to the odd consequence of state prisoners being able to assert a claim that federal prisoners in the very same prison, run by the very same guards, could not raise. Here, the Plaintiffs' argument is essentially that if CCA had contracted directly with ICE, then CCA and Hernandez would be federal actors. But, since CCA is a subcontractor of Williamson County, Hernandez and CCA are state actors subject to § 1983 liability. The Court is reluctant to make the issue of whether a private jailer is a state or federal actor depend of the nature of the contractual arrangement that led to the private facility having custody of the plaintiff. A better determinant would seem to be the nature of the function carried out at the facility. The cases cited by CCA and Hernandez support this determination.

There is no dispute that CCA carried out purely federal functions at the Hutto facility. Unlike the prison in *Alvarez*, Hutto's sole purpose was to detain aliens pending a determination of their immigration status. The detention of aliens "is a fundamental sovereign attribute exercised exclusively by the legislative and executive branches of the United States government." *Medina v. O'Neill*, 589 F.Supp. 1028, 1038 (S.D. Tex. 1984). This is evident from the contents of the Subcontract. The Subcontract incorporates and attaches the IGSA, requires CCA "to comply with each of the terms and conditions set forth in the [IGSA] and provide services in strict compliance" with those terms and conditions, and directs CCA to detain aliens at Hutto "as directed by ICE" and pursuant to the IGSA. *See* Doc No. 82, Exhibit 1 at ¶¶ 1, 2, 16; and Doc No. 122 at ¶¶ 3, 66, 204. The Subcontract does not include any detention-related services or requirements imposed by the County. Doc. No. 82, Exhibit 1 at ¶ 7; and Doc. No. 122 at ¶ 57. The IGSA dictates nearly every aspect of detention at Hutto. Doc. No. 82, Exhibit 2; Doc No. 122 at ¶ 59.

The contractual documents unequivocally establish that the Hutto facility was purely an ICE facility and CCA was charged with carrying out purely ICE functions. Williamson County is a state actor because is derives its authority from the state. ICE is a federal actor because it derives its authority from Congress. CCA and Hernandez are neither state nor federal actors until they carry out a state or federal function. While maintaining a jail may at times be both a federal and state function,[9] maintaining an immigrant detention facility is a purely federal function. Neither CCA nor Williamson County could run an immigration detention facility without the imprimatur of ICE.[10] Thus the Court finds that CCA and Hernandez were at all times acting as federal and not state actors. Plaintiffs therefore cannot bring a section 1983 cause of action against CCA or Hernandez.[11]

## 2. Alien Tort Claim Act Claims

Plaintiffs also bring a claim against CCA pursuant to the Alien Tort Claim Act. The Alien Tort Claim Act or Alien Tort Statute ("ATCA") was adopted in 1789 by the first United States Congress. The statute permits suits by aliens in federal courts for certain international law violations, including human rights violations. It provides jurisdiction only for those claims alleging

---

[9]The county jails that the United States Marshal Service contracts with to provide detention facilities to pretrial detainees charged in this Court are examples of this. Those facilities house not only federal defendants remanded to the Marshal's custody, but also house state jail inmates and detainees.

[10]The Court does not address the issue of whether, had Williamson County carried out the contract in a jail owned and operated by the County, rather than by contracting with CCA, it would have been a federal actor. *See Lewis v. Downey*, 581 F.3d 467, 471 n.3 (7th Cir. 2009).

[11]In this regard, it is important to remember that these defendants remain subject to suit under traditional state tort law. The very reason that the *Bivens* line of cases arose was to deal with the injustice of federal officials not being subject to suit under state or federal law because of sovereign immunity. As private actors, even if carrying out a federal function, Hernandez and CCA have no such immunity, and thus are able to be sued under state law.

violations of "the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The plain text of the statute grants "[t]he district courts . . . original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

CCA asserts that the ATCA does not confer jurisdiction for claims against corporations. There is a circuit split regarding this issue, and the United States Supreme Court has granted certiorari on the question.. *See Kiobel v. Royal Dutch Petroleum Corp.*, 621 F.3d 111, 120, 149 (2nd Cir. 2010), *cert. granted,* 2011 WL 49005479 (Oct. 17, 2011); *but see Sarei v. Rio Tinto, PLC*, 2011 WL5041927 at *6 (9th Cir. Oct. 25, 2011); *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 57 (D.C. Cir. 2011); *Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013, 1021 (7th Cir. 2011). In *Beanal v. Freeport-McMoran*, *Inc.*, 197 F.3d 161, 164-68 (5th Cir. 1999), the Fifth Circuit, without discussing the issue, applied the ATCA to a corporation. Because this issue is unresolved, the Court declines to base its decision on this ground.

CCA also asserts that Plaintiffs cannot state a claim pursuant to the ATCA because CCA may not be held vicariously liable for Dunn's assault of the Plaintiffs under the ATCA. In *Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013 (7th Cir. 2011), Judge Posner, writing for the Seventh Circuit, acknowledges that corporate liability for violations of customary international law "is limited to cases in which the violations are directed, encouraged, or condoned at the corporate defendant's decisionmaking level." *Id.* at 2010. In this case, Plaintiffs have failed to plead that CCA directed, encouraged, or condoned Dunn's assaults on Plaintiffs. As the Supreme Court explained in *Sosa v. Alvarez–Machain*, 542 U.S. 692, 715 (2004), the ATCA gives federal courts jurisdiction to hear claims by an alien for torts in violation of the law of nations. It does not itself provide a cause of action, but provides jurisdiction over certain international law claims, to the extent those

27

claims have been incorporated into the common law.  The Plaintiffs have failed to identify what theory of international law would make CCA liable for Dunn's actions in this case.   Barring that, the complaint fails to state claim here.[12]

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court:

**GRANT** Corrections Corporation of America and Evelyn Hernandez's Amended Motion to Dismiss (Clerk's Doc. No. 133);

**GRANT** Williamson County's Motion for Summary Judgment  (Clerk's Doc. No. 172);

**DISMISS AS MOOT** Williamson County's Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted (Clerk's Doc. No. 143); and

**GRANT IN PART** and **DENY IN PART** the Federal Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Clerk's Doc. No. 145), and **DISMISS** all claims against Neveleff and retain the claims against Rosado and Robertson.

---

[12]It is worth noting that the ATCA, enacted in 1789, has throughout its long history been employed mainly as a gap-filler, providing a remedy where one might otherwise not exist.  It has been applied to aliens who were injured both inside and outside the United States, and who otherwise would have had no recourse against their abusers.  It was traditionally applied to acts such as piracy, human trafficking, war crimes, and genocide.  *See Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1995).  In the modern era it has also been applied to such things as hijacking.  *Id.*  Here, the Plaintiffs' injuries took place on U.S. soil, in a state in which long-standing common law causes of action are available to the Plaintiffs for pursuing compensation for their injuries.  Thus, it seems quite odd to take an exotic cause of action like the ATCA, which is supposed to be reserved for a small number of torts committed in violation of the law of nations, and apply it to assaults that took place in Texas, when Texas law already provides a remedy for that very conduct.  Indeed, it is unclear what, if any, remedies against CCA are available to the Plaintiffs under the ATCA that are not already available to them under Texas tort law.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 8th day of February, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE